# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00338-CV

### William E. Spaulding, III, Appellant

### v.

### Gary Johnson and A.M. Stringfellow, Appellees

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
## NO. GN103592, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

William E. Spaulding, III, appeals from the trial court's summary judgment rendered against him in his suit against appellees Gary Johnson and A.M. Stringfellow[1] challenging certain policy changes in the administration of good conduct time credits ("good time"). We affirm the summary judgment.

---

[1] Gary Johnson was the Executive Director of the Texas Department of Criminal Justice at the time this suit was filed and continues in that position. A. M. Stringfellow was the Chair of the Texas Board of Criminal Justice. It is not clear in what capacity appellant sued appellees. Appellant refers in his original petition to having sued them both individually and in their official capacities, but after his initial pleading he dropped the reference to their official capacities from his style in his filings (including his notice of appeal). However, the disposition of the case is not affected by the capacity in which appellees were sued. Christina Crain is now the Chair of the Texas Board of Criminal Justice and is substituted for A.M. Stringfellow in his official capacity. *See* Tex. R. App. P. 7.2(a) (automatic substitution of public officer). The style of the appeal will not change. For convenience, appellees will be referred to collectively as "the State" or individually as the "Department" or the "Board."

**Factual and Procedural Background**

Appellant began serving a thirty-five year sentence in the Texas Department of Corrections-Institutional Division on August 8, 1981. (The record is silent as to the offense that appellant committed.) Appellant was released onto mandatory supervision on May 25, 1995.[2] Following an infraction at his halfway house, his mandatory supervision was revoked on July 27, 1995. He was returned from confinement in the Tarrant County Jail to custody in the Texas Department of Corrections-Institutional Division on November 28, 1995. The good time that he had previously accumulated while in the institutional division was forfeited. In his suit,[3] appellant complains that the Texas Board of Criminal Justice in 1993 and 1995 enacted unauthorized changes to the policies concerning good time credits that prevented him from having his forfeited good time credit restored. His suit seeks to have those policies declared void and to have his good conduct time restored.[4]

---

[2] Under the law in effect at the time, when an inmate's good conduct time and time served equaled the total sentence, the inmate was automatically released to "mandatory supervision." A release to parole was discretionary. The mandatory supervision statute was amended in 1996 to allow certain exceptions to release even if the inmate otherwise qualified for release onto mandatory supervision. *See* Tex. Gov't Code Ann. § 508.149(b) (West 1998).

[3] Appellant proceeded pro se at trial and proceeds pro se on appeal. Appellant did not proceed *in forma pauperis*. Accordingly, Chapter 14 of the Texas Civil Practice and Remedies Code that sets certain requirements for inmates proceeding under an affidavit of indigence, such as a disclosure of previously filed suits and their outcomes, does not apply. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 14.001-.014 (West 2002).

[4] It is not clear that the 1993 Board policy could have affected appellant. The 1993 policy appears to have affected only the restoration of good time following a disciplinary violation occurring while the inmate was incarcerated. There is no evidence in the record that appellant incurred such a violation.

*Applicable Statutes*

Appellant's challenge involves the interaction of former section 498.004 of the Texas Government Code, "Forfeiture and Restoration of Good Conduct Time," and former section 498.005, "Annual Review of Classification." Immediately before September 1, 1995, the relevant portion of section 480.004 read:[5]

> (b) On the revocation of parole or mandatory supervision of an inmate, the inmate forfeits all good conduct time previously accrued. On return to the institutional division, the inmate may accrue new good conduct time for subsequent time served in the division. The director of the institutional division may restore good conduct time forfeited on a revocation that does not involve a new criminal conviction after the inmate has served at least three months of good behavior in the institutional division, subject to rules adopted by the division. Not later than the 60th day after the date an inmate is returned to the institutional division following a revocation of parole or mandatory supervision, the pardons and paroles division shall notify the director of the institutional division of the grounds for revocation.

Act of March 25, 1991, 72d Leg., R.S., ch. 16, § 10.01, sec. 498.004, 1991 Tex. Gen. Laws 270, 298. The other applicable statute, former section 498.005, read:

> At least annually, the board shall review the institutional division's rules relating to restoration of good conduct time that has been forfeited, the manner in which inmates are reclassified, and the manner in which additional good conduct time is awarded retroactively to inmates who have been reclassified. The board shall consider in its review whether the inmate overcrowding in the institutional division has decreased and whether it is necessary for purposes of decreasing overcrowding to classify inmates according to Section 498.002, to restore good conduct time under Section 498.004, or to award additional good conduct time retroactively to inmates who have

---

[5] Subsection (a) of section 498.004 applied to restoration of good time forfeitures based on disciplinary violations while incarcerated. There is no evidence that this subsection applies, as the only forfeiture of good time disclosed in the record was under (b) above.

3

been reclassified. If the board determines that overcrowding has decreased and it is not necessary to classify inmates according to Section 498.002(a), it shall order the institutional division to classify inmates according to Section 498.002(b). If the board determines that overcrowding has decreased and it is not necessary to restore good conduct time or award additional good conduct time, it shall direct the institutional division to discontinue those practices.

*Id*. § 498.005. Effective September 1, 1995, the statutes changed to their current versions:

(b) On the revocation of parole or mandatory supervision of an inmate, the inmate forfeits all good conduct time previously accrued. On return to the institutional division, the inmate may accrue new good conduct time for subsequent time served in the division. The department may not restore good conduct time forfeited on a revocation.

Act of May 26, 1995, 74th Leg., R.S., ch. 249, § 4, 1995 Tex. Gen. Laws 2175, 2175 (now codified at Tex. Gov't Code Ann. § 498.004(a) (West 1998)).[6]

In April 1995, the Board directed the Department to cease the restoration of good time that had been forfeited after a return from parole or mandatory supervision. Appellant contends that before September 1, 1995, the Board could order the Department to cease the restoration of good conduct time *only* if it found that overcrowding had decreased. He contends that the Board failed to establish that the necessary prerequisite had occurred and so it lacked the authority to promulgate

---

[6] Section 498.005 now reads simply:

At least annually, the board shall review the institutional division's policies relating to the manner in which inmates are classified and reclassified, and the manner in which additional good conduct time is awarded retroactively to inmates who have been reclassified.

Tex. Gov't Code Ann. § 498.005 (West 1998).

4

the April 1995 policy.  The State moved for summary judgment on the bases that the statute of limitations barred appellant's claim and that appellant had not demonstrated the necessary liberty interest to prevail on a due process claim concerning the restoration of his good conduct time.  As part of its second ground, the State argued that the trial court lacked jurisdiction because appellant provided no statutory authority for his ability to bring his claim that the State acted outside its legal authority.  The court granted summary judgment.  On appeal, appellant contends that the trial court erred in granting summary judgment because the statute of limitations had been tolled (issues one and two) and he had established the necessary liberty interest to sustain a due process claim (issues three through six).

## Discussion

### *Standard of Review*

This Court reviews a summary judgment under a *de novo* standard of review. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994).  The standards for reviewing a traditional motion for summary judgment are (1) the movant has the burden of showing there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference will be indulged in favor of the nonmovant and any doubts resolved in the nonmovant's favor.  *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).  A defendant is entitled to summary judgment if at least one element of each of the plaintiff's causes of action is negated as a matter of law.  *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 476-77 (Tex. 1995).  Once a defendant negates

an element of a plaintiff's cause of action, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the challenged element. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

Appellees moved for summary judgment on two grounds. When a movant asserts multiple grounds for summary judgment, and the order does not state the theory upon which the trial court based its judgment, the non-movant on appeal must negate any grounds on which the trial court could have granted the order. *Malooly Brothers, Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970). Otherwise, we affirm the summary judgment if any one of the theories advanced has merit.

### *Appellant's Litigation*

We share the State's concern that appellant's pleadings are unclear about what cause of action appellant brings. His suit appears to be in the nature of a declaratory judgment concerning his and appellees' rights and obligations under the laws and policies concerning good time credits, specifically the restoration of forfeited good time credits. Appellant complains that before the September 1, 1995, amendment to section 498.004, the Board was without authority to order the Department to cease the restoration of good conduct time without making a prerequisite finding that overcrowding had declined. Appellant asks that we hold that the Board's policy was void and argues that inasmuch as his good conduct time was forfeited pursuant to a void policy, it should be restored.

We note that, although former section 498.005 made it mandatory for the Board to order the Department to cease the restoration of good conduct time if it found a decrease in overcrowding, it likewise called on the Board to only consider overcrowding as *one factor* in its annual review of inmate classification and good time policies, seemingly leaving open to the Board's

6

discretion a decision to end the restoration of good conduct time for all or some types of violations, depending on all the facts and circumstances. The statute does not seem to mandate that the Board could cease the restoration of good conduct time only if overcrowding decreased.

Further, although former section 498.004 gave the Department discretion to restore good time in any individual case, it did not mandate such a restoration. At least since 1977, Texas law has provided that good time credits apply only to eligibility for parole or mandatory supervision rather than actually reducing an inmate's sentence. Act of May 30, 1977, 65th Leg., R.S., ch. 347, § 3, 1977 Tex. Gen. Laws 932, 932. From that time until the September 1, 1995 change, the statute made restoration of good conduct time discretionary.

The record leaves unclear the actual date when appellant's accrued good time was forfeited, as opposed to his re-arrest and re-incarceration. However, even if we use the date that appellant seems to assert as the controlling date, July 27, 1995, his pleadings show injury, not from an allegedly unlawful action by the Board, but from the change in the statute. Appellant argues that the pre-1995 version of the statute applies. Assuming without deciding the correctness of that conclusion, under the pre-1995 version of the statute, appellant had to be re-incarcerated for at least three months before he was eligible for the then-discretionary restoration of his good conduct time.[7] Act of March 25, 1991, 72d Leg., R.S., ch. 16, § 10.01, sec. 498.004, 1991 Tex. Gen. Laws 270, 298 (former § 498.004(b)) ("may restore good conduct time . . . after . . . at least three months"). Three months starting from July 27 yields a date well after September 1. Therefore, at the time of the

---

[7] Although appellant asserts that under policies in effect before April 1985, it was customary for good conduct time to be restored for mandatory supervision revocations that did not involve a criminal act, he provided no evidence in the record of such a policy.

7

change in the statute, appellant was not even eligible for restoration of his good conduct time under the pre-1995 version of the statute. Thus, at the earliest time that appellant was eligible for that restoration, the statute had changed, removing the Board's discretion to restore his good time credits.[8] Consequently, the trial court correctly determined that as a matter of law, the Board was without discretion to restore appellant's good time credits. We overrule issues three through six.

Appellees also moved for summary judgment based on the statute of limitations. Because we have affirmed the summary judgment on another basis, we do not consider the limitations issue raised in points one and two.

## Conclusion

We hold that appellees established that they were entitled to summary judgment as a matter of law. We affirm the trial court's judgment.

_____

Mack Kidd, Justice

Before Chief Justice Law, Justices Kidd and Patterson

Affirmed

Filed: October 30, 2003

_____

[8] Application of the September 1, 1995, change was not an improper *ex post facto* law. *See Ex parte Hallmark*, 883 S.W.2d 672, 674 (Tex. Crim. App. 1994).